IN THE UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

| | | |
|---|---|---|
| CLINT C. WILLIAMS, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Case No. 05-1938-KI |
| | ) | |
| vs. | ) | OPINION AND ORDER |
| | ) | |
| JEAN HILL, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

Clint C. Williams
#6939477
OSCI
3405 Deer Park Drive SE
Salem, Oregon  97310-0595

    Pro Se Plaintiff

Page 1 - OPINION AND ORDER

>Hardy Myers
>Attorney General
>Leonard W. Williamson
>Assistant Attorney-In-Charge
>Department of Justice
>1162 Court Street NE
>Salem, Oregon  97301-4096
>
>>Attorneys for Defendants

KING, Judge:

Plaintiff Clint Williams, an inmate at the Snake River Correctional Institution, alleges that several prison officials violated his Eighth Amendment rights when they forced him to move to different cells twice, each time resulting in injury to Williams.  Before the Court is Defendants' Motion for Summary Judgment (#46).  For the reasons below, I grant the motion and dismiss all claims with prejudice.

## FACTS

Williams is incarcerated at Snake River Correctional Institution ("SRCI").  He suffers from advanced osteoarthritic changes to his right hip and degenerative disk disease in his cervical spine.  Williams received treatment for these chronic conditions at SRCI starting with his first complaints of pain on July 13, 2005.

On August 31, 2005, Captain Frank Horton worked as the shift lieutenant on Complex 2 where Williams was housed.  Because of an investigation of alleged misconduct involving Williams, Lieutenant Foote asked the Assignment Office to move Williams out of his cell.  As Williams was moving to Complex 3, he approached Captain Horton and told him that he was restricted to a bottom bunk but was being moved to a top bunk.  Captain Horton called Master

Page 2 - OPINION AND ORDER

Control to check on the restriction.  A Master Control staff person told Captain Horton that Williams had no housing restrictions.  Captain Horton told Williams this and instructed him to report to his new housing assignment quickly because SRCI was about to conduct an institutional count.  He also suggested that Williams sign up for sick call to check on any restrictions that Williams thought he should have.

SRCI later discovered that Williams did have a bottom bunk restriction.  The Master Control staff person did not give correct information to Captain Horton because the staff person relied on the Daily Movement Log instead of checking the DOC400 computer system where restrictions are stored.

Later the same night, Williams reported that he fell from his new top bunk and hurt himself.  SRCI staff sent Williams by ambulance to Holy Rosary Medical Center in Ontario, Oregon.  He returned to SRCI just after 5:00 AM the following morning and stayed in the infirmary until a practitioner could see him.  Dr. Duncan released Williams to the general population at 12:30 PM on September 1, 2005.  Williams was walking without any signs of discomfort.

On November 28, 2005, Officer Marchbanks instructed Williams to move a second time to another housing unit.  Williams again objected and told the officer that he had medical restrictions.  He asked Officer Marchbanks if he could use an empty laundry cart to carry his belongings.  Officer Marchbanks refused the request and made Williams carry his property.  At the time, Williams did not have any restrictions for lifting or bending.

Williams reported to sick call at 9:30 PM that same evening complaining that he injured his hip and back moving his things between cells.  He refused medication for pain relief and

Page 3 - OPINION AND ORDER

would not listen to advice about the use of hot or cold packs. Williams wanted to return to his unit. About ten minutes later, a nurse asked Williams if he could get around in his housing unit and get to the dining room. He stated, "No, just wheel me back and put me in my bed." Gulick Aff. ¶ 12. The nurse told Williams that he would have to stay in the infirmary if he could not perform the activities of daily living. Williams was wheeled to the infirmary and admitted for overnight observation. He was restricted to complete bed rest but left his infirmary room once and was redirected back to bed.

The next morning, Dr. Schantzen examined Williams and noted that his degenerative joint disease was aggravated. She ordered an X-ray, authorized use of a cane for a week, and prescribed a brief course of narcotic pain medication. The X-ray showed no fracture or dislocation. The radiologist noted that the severe degenerative changes in the right hip were essentially unchanged from earlier films.

## LEGAL STANDARDS

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c). The initial burden is on the moving party to point out the absence of any genuine issue of material fact. Once the initial burden is satisfied, the burden shifts to the opponent to demonstrate through the production of probative evidence that there remains an issue of fact to be tried. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). On a motion for summary judgment, the evidence is viewed in the light most favorable to the nonmoving party. Universal Health Services, Inc. v. Thompson, 363 F.3d 1013, 1019 (9th Cir. 2004).

**DISCUSSION**

Williams alleges that defendants violated his Eighth Amendment rights by assigning him to a top bunk, causing him to fall and injure himself, and by forcing him to carry his belongings to a new cell, causing him to injure himself.

The Eighth Amendment is violated if prison officials are deliberately indifferent to a prisoner's serious medical needs. <u>Toguchi v. Chung</u>, 391 F.3d 1051, 1057 (9th Cir. 2004).

> To establish an Eighth Amendment violation, a prisoner must satisfy both the objective and subjective components of a two-part test. First, there must be a demonstration that the prison official deprived the prisoner of the minimal civilized measure of life's necessities. Second, a prisoner must demonstrate that the prison official acted with deliberate indifference in doing so.
>
> A prison official acts with deliberate indifference . . . only if the [prison official] knows of and disregards an excessive risk to inmate health and safety. Under this standard, the prison official must not only be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, but that person must also draw the inference. If a [prison official] should have been aware of the risk, but was not, then the [official] has not violated the Eighth Amendment, no matter how severe the risk. This subjective approach focuses only on what a defendant's mental attitude actually was. Mere negligence in diagnosing or treating a medical condition, without more, does not violate a prisoner's Eighth Amendment Rights.

<u>Id.</u> (internal citation and quotation omitted).

Williams does not base his claim on the medical treatment he received after allegedly being injured as a result of both cell moves. Instead, Williams bases his claim on the requirements that he sleep in a top bunk and carry his belongings without assistance from a cart.

Neither of these requirements are a deprivation of the minimal civilized measure of life's necessities unless Williams had documented physical limitations of which the particular defendants were aware. Captain Horton checked for a bunk limitation and was incorrectly told

Page 5 - OPINION AND ORDER

that Williams had none. Although this is negligent on the part of the Master Control staff person for incorrectly looking up Williams' information, Captain Horton had no knowledge that he was given bad information. Thus, neither Captain Horton nor any of the other defendants had knowledge of Williams' bunk restrictions. Assuming that Williams has serious medical needs, defendants did not act deliberately indifferent to them because they were unaware that a substantial risk of serious harm existed.

Williams' case is even weaker concerning carrying his property to the second new cell without use of a cart. Although Williams was being treated for his hip and back pain, the doctors had not put any bending or lifting restrictions on him. Thus, again, defendants were not deliberately indifferent to Williams' serious medical needs.

## CONCLUSION

Defendants' Motion for Summary Judgment (#46) is granted. All claims are dismissed with prejudice.

IT IS SO ORDERED.

Dated this  15th  day of July, 2008.

                                    /s/ Garr M. King
                                    Garr M. King
                                    United States District Judge